```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                   ABILENE DIVISION

UNITED STATES OF AMERICA    )  CAUSE NO. 3:14-CR-014-P
                            (
vs.                         )
                            (  SEPTEMBER 11, 2014
                            )  DALLAS, TEXAS
TROY E. POWELL              (  10:00 A.M.
_____



_____

                        SENTENCING


           BEFORE THE HONORABLE JORGE A. SOLIS
                UNITED STATES DISTRICT JUDGE
_____


                    A P P E A R A N C E S


     FOR THE GOVERNMENT:    UNITED STATES ATTORNEY'S OFFICE
                            1205 TEXAS AVENUE, 7TH FLOOR
                            LUBBOCK, TEXAS  79401
                            (806) 472-7351
                            BY:  MR. STEVE SUCSY

     FOR THE DEFENDANT:     PROPST LAW FIRM, PC
                            P.O. BOX 3717
                            ABILENE, TEXAS  79604
                            (325) 437-9977
                            BY:  MR. JEFFREY PROPST

     OFFICIAL COURT REPORTER:  SHAWN M. McROBERTS, RMR, CRR
                               1100 COMMERCE STREET, RM. 1654
                               DALLAS, TEXAS  75242
                               (214) 753-2349
```

1           THE COURT:  Call case No. 1:14-007, United States
2   versus Troy Powell.
3           MR. SUCSY:  The United States is ready, Your Honor.
4           MR. PROPST:  Jeff Propst for the Defense.  We are
5   ready, Your Honor.
6           THE COURT:  And you are Troy Powell?
7           THE DEFENDANT:  Yes, sir.
8           THE COURT:  Mr. Powell, you were found guilty by the
9   Court after a bench trial back on April the 24th, 2014 of the
10  offense of failure to register as a sex offender.
11      We are now here on a sentencing hearing.  And the
12  Probation Office has prepared a presentence report, and they
13  have also prepared an addendum to the presentence report.
14  Have you had the opportunity to review those reports with
15  Mr. Propst your attorney?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  Do you understand all of the information
18  in these reports?
19          THE DEFENDANT:  Yes, sir.
20          THE COURT:  And Mr. Propst, you have been over the
21  reports with your client?
22          MR. PROPST:  I have, Your Honor.
23          THE COURT:  And you are satisfied that Mr. Powell
24  understands all of the information in these reports?
25          MR. PROPST:  I am, Your Honor.

1          THE COURT:  And you had some objections, and we will
2  come back to those in a moment.
3       And Mr. Sucsy, you have no objections to the report.  Is
4  that correct?
5          MR. SUCSY:  That is correct.  I have some argument I
6  would like to make.
7          THE COURT:  And I will give you an opportunity to
8  argue, but no objections.
9       Mr. Propst, let's take up your objections.
10          MR. PROPST:  Yes, Your Honor.
11          THE COURT:  And I did receive those letters from the
12  financial institutions that you submitted this morning, and I
13  have read over those.
14          MR. PROPST:  Yes, sir.  Thank you for looking at
15  those.  That relates to the objection about -- Objection 5 in
16  my written objections to item 59 in the PSR which states that
17  he is facing foreclosure.  I was -- probably I didn't word
18  that very artfully.  Facing foreclosure, I just meant it is
19  likely.  I am not sure -- The addendum addressed that, and
20  apparently there are no pending legal proceedings.  I don't
21  want to get too far afield on that.  I don't think it would
22  matter.  But I think it would go to his ability to pay a fine.
23       The other objections to the PSR are likewise, Your Honor,
24  I think sort of peripheral to really what I think the Court
25  will decide today, but the one that I would like to address is

1   the objection to the letters that were included in the PSR,
2   the letters from the daughter.
3   　　　The case law on that says that -- Of course the Court can
4   consider hearsay information in sentencing, but it has to have
5   some minimal indicia of reliability.  There is not a lot of
6   Fifth Circuit or U.S. Supreme Court guidance on that.  I don't
7   find examples of -- When I look at the case law, I don't find
8   examples, well, this was below the level and this was above
9   it, or anything that would give us a little better guidance.
10  　　　However, I would submit to the Court that if these
11  letters from Mr. Powell's daughter are sufficiently reliable
12  to be considered, given the standards of due process, it is
13  hard for me to imagine evidence that could be submitted that
14  wouldn't pass the test.  It is hard for me to imagine what
15  would fall beneath it if these pass the test.
16  　　　The girl that wrote these is a teenager.  Clearly, from
17  the letters, she writes on a level that is not consistent with
18  her age.  She clearly has some sort of developmental delay and
19  is writing much more along the lines of what you would expect
20  from an elementary student.  There was evidence at trial, I
21  believe, and if not at trial, certainly in the PSR, that Mr.
22  Powell's daughter has spent time at a mental institution here
23  in Abilene.
24  　　　And the letters themselves contain inconsistencies that I
25  think are material.  In the letter to the Court she states

1  that Mr. Powell sexually abused her three times.  In the
2  letter to Mr. Powell, which is also attached to the PSR, she
3  states that she was molested three times--once by Mr. Powell,
4  once by her grandpa, and once by somebody that she at no time
5  tells us who it is.  I hope that she was never molested once.
6  That would be terrible.  The fact that she relates quite
7  different stories in two letters that are attached bears on
8  the credibility and the reliability of those letters.
9      One thing is clear from the letters.  She has a poor
10 relationship with her father.  She doesn't care for him.  But
11 then the Court is left asking the question, well, which came
12 first--the chicken or the egg.  Is she accusing him of doing
13 this because she doesn't like him, or does she not like him
14 because he did this?
15     On the evidence that is before the Court, and that
16 doesn't include any police reports of investigation nine years
17 ago, it doesn't include even that a call was made, it is a
18 bare accusation in a letter without a live witness that we can
19 judge the meaning and credibility of.  Of course the Court can
20 consider hearsay evidence, but when you get to hearsay
21 evidence that is this tenuous, it certainly would be helpful
22 to the Court to determine reliability to see what the girl is
23 saying.  As far as I know there is nothing stopping the
24 Government from having her here.  Therefore, we think it falls
25 below that threshold of minimal indicia of reliability.

1         The case law also states that the Defense bears the
2    burden of proving that it is materially untrue.  There is some
3    obvious difficulties there.  It is -- It has been said that it
4    is impossible to prove a negative.  If someone accuses another
5    person of molesting them nine years ago, all that exists is
6    that--the current accusation.  How does one show that that
7    didn't happen?  How does one show that it is materially
8    untrue?
9         I would argue that if the Fifth Circuit law means that
10   the Defense has a burden of presumption, that the Defense has
11   to produce evidence that is material and true, I think that in
12   itself would be offensive to due process because I am not sure
13   how we would ever do that.  I take it to mean -- When the
14   Fifth Circuit case law says the Defense bears the burden to
15   show it is material and true, I take it to mean we bear a
16   burden of persuasion, and I think that the Court can find the
17   letters to not be reliable enough to be considered simply
18   based on the internal inconsistencies that are in the letters
19   themselves, using three times in one and using once in the
20   other; combined with the fact that it is hearsay, which is
21   less reliable; and that it is clearly written by someone who
22   is mentally challenged.
23            That is all I have on that objection, Your Honor.
24            THE COURT:  Mr. Sucsy?
25            And that is the only objection that remains.  Well, you

1  had one objection that affected the calculation of the
2  Guidelines.  That was accepted by Probation, so that is the
3  only remaining objection.
4       Mr. Sucsy, I will hear from you on that issue.
5           MR. SUCSY:  On this issue, Your Honor?
6           THE COURT:  Yes.
7           MR. SUCSY:  The question was raised, well, if this
8  satisfies a minimum indicia of reliability then what could
9  fail to rise to that level.  Something such as I would suggest
10 a letter from somebody other than the person asserting it
11 themselves.  This is a handwritten letter in which she sets it
12 out.  Yes, technically it may be hearsay, but this is a letter
13 by the person to the Defendant setting out what happened, and
14 there is not any possible interpretation of that than at least
15 on one occasion that he abused her.
16      Now, another thing that is highlighted by this situation
17 is the fact that, as Defense counsel stated, she has a
18 learning disability, which actually causes her to fall into
19 the same pattern as other of his victims.
20      And as far as whether or not a victim is available to
21 testify, there are many factors that go into that situation,
22 including their mental state, which, to some extent, could be
23 attributed to the Defendant himself.  And so what we have is
24 actually a firsthand account, a letter in which he confronts.
25           And as to the issue of bias, the letter itself, I think

1  it speaks for itself as to the fact that she doesn't have pure
2  bias.  She has mixed emotions that are consistent with a
3  person who has been victimized by their father, and there is a
4  love element of it in a letter she signs off, I believe, "Love
5  you."  But there are other aspects of it that are consistent
6  about her feelings about having been abused.
7       So the Government would assert this letter certainly
8  should be taken into consideration by the Court and does
9  satisfy the requirements of admissibility of evidence for this
10 kind of a hearing.
11           THE COURT:  Okay.  Thank you.
12      Mr. Propst, anything else on that?
13           MR. PROPST:  No, Your Honor.
14           THE COURT:  Okay.  Well, and I have read the
15 letters, and appears to be two to the father and then one to
16 the Court.  And I think the letters do contain a sufficient
17 indicia of reliability for the Court to admit them into
18 evidence and rely upon them to some extent.  She is consistent
19 in all three letters that Mr. Powell abused her.  And I don't
20 know that they are as inconsistent as you are trying to make
21 it out.  It looks like she is fairly consistent that there
22 were three different individuals that assaulted her, and what
23 may be unclear about Mr. Powell is that he might have abused
24 her on multiple occasions, and that is the three times that he
25 did it.  But I think she is fairly consistent that it seems

1  like there were two others.  So they can be harmonized,
2  whether or not completely inconsistent.
3      But what is consistent, even regardless of that, is that
4  she is with mixed emotions.  She is constantly telling her
5  father that he abused her and he hasn't given any answers for
6  what he did and why he did it.
7      So I think it is sufficiently reliable to enable the
8  Court to at least rely on it in this case.  Overrule that
9  objection.
10     Any other objections we need to address, counsel?
11         MR. PROPST:  I don't have any other argument for the
12 other objections.  We just rely on the written statement.
13 There are small factual discrepancies.  I am not sure that
14 they are going to bear any weight.
15         THE COURT:  On that basis, then, I will accept the
16 findings of the Probation Office as contained in the
17 presence report.  I will adopt those as the findings of the
18 Court.
19     We have an offense level of 14, the Criminal History
20 Category is IV, the Guideline range is 27 to 33 months.
21     And Mr. Propst, I will hear from you regarding
22 sentencing.
23         MR. PROPST:  Well, Your Honor, Mr. Powell, it was
24 some 20 or so years ago that he got the conviction that made
25 him qualify for -- made him required to register, and,

1    therefore, sets him up as a person who can be penalized for
2    failure to register.  His record on that probation was not
3    good.  He got revoked.  But when he got out of prison in the
4    early 2000s, he stayed free of trouble until he was in
5    Illinois.
6         The PSR paints a picture of the offense from Illinois,
7    and I expect that Mr. Sucsy will rely on that offense as
8    something that the Court should be concerned about.  I have to
9    try to draw that in perspective, though.  The State of
10   Illinois, with its resources, decided that case ultimately was
11   worth a misdemeanor probation.  They were closer to that case
12   than we are here.  They had all the facts, they had live
13   people to talk to, and it came out to be a misdemeanor
14   probation.
15        So despite -- And what I anticipate Mr. Sucsy will argue,
16   that the Court should put a lot of weight into that offense
17   from Illinois.  I think that it is -- the correct perspective
18   is to look at what the final result was.
19        That reminds me of the offense from Colorado, which was
20   the 20-year-old felony that was originally charged as having
21   used -- that Mr. Powell had used force against this
22   14-year-old girl.  That was later reduced, and what he was
23   found guilty of there was, you know, what we would call
24   statutory rape, at some point in the past we used to call it
25   that, with no force.

1     Therefore, I would just ask the Court to consider the low
2  end of the Guidelines.  Mr. Powell did insist on his right to
3  trial.  He put the Government to their burden of proof.  He
4  knew that he wouldn't get his acceptance points when he did
5  that, but I think that the Guideline range that we are in is
6  appropriate.  We just ask for the low end of that.
7              THE COURT:  Thank you.
8       Mr. Powell, if you will come on up to the podium.
9  Anything that you wish to state?
10             THE DEFENDANT:  No, sir.
11             THE COURT:  Mr. Sucsy?
12             MR. SUCSY:  Your Honor, the argument that was just
13 made I think highlights the fact that Mr. Powell is
14 essentially a lifetime beneficiary of plea bargaining and the
15 give and take that is required in the criminal justice system.
16 But when parents face the prospect of calling their teenage
17 daughter, they have to testify in a possible trial or, as the
18 case -- the situation was, again, in Illinois, an individual
19 who was mentally challenged and their ability or willingness
20 to testify, that makes these cases difficult.
21      But even as the cases resulted, as counsel said what was
22 the final result, well, up there he may have been entitled at
23 some point to a probated sentence, but then ultimately was
24 ordered to custody in Illinois, and then absconded and came
25 down here, and they had a warrant for his arrest.  It is true

1  that the presentence report doesn't say there are pending
2  charges, but they were simply unwilling to remove him -- to
3  extradite him back to Illinois.
4       And a reference was made to the resources of the State of
5  Illinois.  Well, I think we all know that the resources of
6  many states are very much in question, as demonstrated by the
7  fact that they are unwilling to extradite for what they
8  consider to be lesser crimes from the standpoint of the -- he
9  was facing not 50 or 100 years or some large amount of time,
10 but in the scheme of things in their system, a lesser
11 sentence.
12      But this Defendant has engaged in a pattern of exploiting
13 individuals who are vulnerable by age or mental capacity, and
14 the requirement to register as a sex offender is essentially
15 not so much a supervisory element or requirement, but it is a
16 notice-related requirement.  It is intended to give
17 individuals the opportunity to keep younger, say, teenage
18 girls away from him, or individuals who may have impaired
19 mental capacity so that they don't entrust him with being
20 around these individuals.  And his failure to register is at
21 the heart of the danger that we have.
22      The presentence report references the *Segura* case, which
23 was out of this district, and it has been resolved that the
24 Guidelines call for a five-year supervisory period, whereas
25 the statutory range goes all the way up to life.  And that has

1   been, by the Fifth Circuit, deemed to be absent any other
2   findings to place a five-year cap on a supervisory period.
3   But I would point out to the Court that the Court could
4   certainly -- would be justified in enunciating the grounds for
5   extending the supervision in excess of five years would be
6   applicable in this case, and I would assert would be
7   justified.
8       This Defendant began with his exploiting minors when he
9   was 24 or 25 years old, in that range, and he is well beyond
10  that, and he has continued in this pattern. And so beyond his
11  requirement to register, which he may or may not comply with,
12  the Government would assert that it would be helpful to have
13  him under supervision as a term of supervised release in this
14  case in the sentence for in excess of five years. I this his
15  life has demonstrated that a shorter term of supervision such
16  as five years would likely endanger people in the future.
17      And I am not going to belabor the facts of the case.
18  Certainly the Defendant was convicted of failure to register,
19  but the Government would just assert that these other
20  circumstances which are not really -- I suppose you could say
21  that in a sense his criminal history and his life history
22  indicate that he is at a greater risk to the community than
23  maybe other individuals convicted of the same type of offense.
24  And for that reason there are grounds for the Court to
25  consider an upward variance in this case, not only as to the

1   sentence but also as to the term of supervised release.
2           THE COURT:  Thank you.
3       Mr. Propst, if you and your client would come up to the
4   podium.
5        Any other argument, then, regarding sentencing,
6   Mr. Propst?
7            MR. PROPST:  Your Honor, I would just add that
8   Mr. Sucsy referred to a pattern, and I suppose two or more of
9   any event does sort of make a pattern.  But we are talking
10  about 20 years ago in Colorado and then a couple of years ago
11  in Illinois.  What happened in Colorado involved a
12  14-year-old.  What happened in Illinois involved a lady that
13  was -- she was above the age of majority.
14       Presumably Illinois has a statute that prohibits sexual
15  assault.  Presumably they have a statute that prohibits, you
16  know, what we would call aggravated sexual assault or just,
17  you know, just flat out rape.
18       Mr. Sucsy has referred to Mr. Powell being a beneficiary
19  of the plea bargain system.  There is no -- On the evidence
20  that is before us, it is a 50/50 shot whether that is the case
21  or whether that case was overcharged.  So I would not put as
22  much stock into the Illinois case showing a pattern as has
23  been argued, and we think that the Guidelines are appropriate.
24       Additionally, Your Honor, before I forget, I would
25  request a non-binding recommendation that whatever time

1  Mr. Powell does spend in prison be done at the FCI in Pekin,
2  Illinois.
3           THE COURT:  Thank you.
4       Well, the offense level we have established here is 14,
5  Criminal History Category IV, the Guideline range is 27 to 33
6  months.
7       And I agree with Mr. Sucsy in this case that the evidence
8  here shows a pattern.  We do have the Colorado offense, which
9  was 20 years ago, but then you have the issues with his
10 daughter where she is reporting that he abused her.  That is
11 certainly in between the Colorado and the Illinois case.  And
12 then you have the Illinois case.  And even though they pled
13 them down for whatever reason, and I am not going to
14 speculate, you still have those two convictions, and you have
15 some allegations that I find, you know, credibility -- that
16 there to be some credibility of assaulting his daughter.
17 Clearly it shows a pattern.  And the last one was just in
18 2012, the one in Illinois, a mentally disabled young lady.
19 And as Ms. Johnson, his daughter, certainly appears to have
20 some issues there, from reading the letters.  So that appears
21 to be where you tend to go, Mr. Powell, and take advantage of
22 certain situations.  And that is what the report indicates,
23 the PSR out of that Illinois case.
24      So I do find that you are -- that the Guidelines do not
25 sufficiently take into account the threat that you pose to

1   society out there and some of these vulnerable victims.  I am
2   going to vary upward four levels in this case.  Level 18,
3   criminal History Category IV, the Guideline range is 41 to 51
4   months.
5       It will the be the judgment of the Court, Mr. Powell,
6   that you be sentenced to the custody of the U.S. Bureau of
7   Prisons for a term of 48 months.
8       That will be followed by a five-year term of supervised
9   release.
10      I will not order a fine.
11      Restitution is not applicable.
12      There is a $100 mandatory special assessment that has to
13  be imposed in each case.  That will be imposed in your case.
14      Following your release from custody, you will be on this
15  supervised release for a term of at least five years.  There
16  will be certain conditions you have to follow, including
17  reporting to a Probation officer, and other conditions.  They
18  will explain those to you, but among the conditions are that
19  you not commit any other violations of law, whether it be
20  federal, state, or local law.
21      Cooperate in the collection of DNA, as directed by your
22  Probation officer.
23      Do not possess a firearm, ammunition, destructive device,
24  or any type of dangerous weapon.
25      Comply with the Sexual Offender Registration Notification

1     Act and registering as appropriate.
2          Do not use alcohol or any other intoxicants during the
3     term of your supervision.
4          Participate in sex offender treatment services, as
5     directed by your Probation officer, until you are successfully
6     discharged.  You will be ordered to make a monthly payment of
7     at least $20 per month to help pay for the cost of these
8     services.
9          Do not utilize or possess a camera, recording device,
10    camcorder, or other similar device during the term of your
11    supervised release, without the prior approval of your
12    Probation officer.
13         Have no direct contact with the victims or victims'
14    family or any of the prior offenses, either directly or
15    indirectly, without the prior knowledge and approval of your
16    Probation officer.
17         Do not have any unsupervised contact with persons under
18    the age of 18 years.
19         Do not date or befriend anyone who has children under the
20    age of 18 years, without the prior permission of your
21    Probation officer.
22         And do not possess or have under your control any
23    sexually-oriented or sexually-stimulating materials of either
24    adults or children.  And do not patronize any place where
25    material is available.

1    I need to advise you, Mr. Powell, that you have the right
2    to appeal this case, both the trial that we had back in April
3    as well as the sentence that I have imposed here today, the
4    decisions that I have made.  If you don't have the means to
5    hire an attorney to represent you on appeal, we will appoint
6    an attorney to represent you at no cost.
7         You will be furnished copies of the transcript of the
8    trial that we had on April 24th as well as today's hearing.
9    Those will be furnished at no cost.  Speak with Mr. Propst
10   about exercising your right of appeal, if you wish to do so in
11   this case.
12        Mr. Propst, anything else we need to address here?
13             MR. PROPST:  No, Your Honor.
14             THE COURT:  Mr. Sucsy, anything?
15             MR. SUCSY:  No, Your Honor.
16             THE COURT:  Mr. Powell, you are remanded to the
17   custody of the Marshal, then, to serve your sentence.  Good
18   luck to you.
19        Court is adjourned.
20                       (End of hearing.)

```
 1                    I HEREBY CERTIFY THAT THE FOREGOING IS A

 2              CORRECT TRANSCRIPT FROM THE RECORD OF

 3              PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

 4              I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

 5              FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

 6              COURT AND THE JUDICIAL CONFERENCE OF THE

 7              UNITED STATES.

 8

 9              S/Shawn McRoberts                10/23/2014

10              _____DATE_____
                SHAWN McROBERTS, RMR, CRR
11              FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```